## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

T.A.S.,[1]

        Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of the Social
Security Administration,

        Defendant.

Case No. 21-2167-DDC

## <u>MEMORANDUM AND ORDER</u>

Plaintiff filed this action under 42 U.S.C. § 405(g), seeking judicial review of a decision by the Commissioner of the Social Security Administration denying plaintiff's claim for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, as amended. Plaintiff has filed a brief asking the court to reverse the Commissioner's decision denying her claim and remand her claim to the Commissioner for further proceedings. Doc. 13. She argues that the Administrative Law Judge (ALJ) erred when formulating plaintiff's residual functional capacity (RFC). The court agrees with plaintiff. It thus reverses the ALJ's decision, directs the Clerk to enter judgment under the fourth sentence of 42 U.S.C. § 405(g), and remands this case for further proceedings. The court explains why, below.

---

[1]    The court uses plaintiff's initials here to preserve the privacy interests of Social Security plaintiffs.

## I.      Background

Plaintiff protectively filed for Supplemental Security Income and Disability Insurance Benefits on October 31, 2018.  Doc. 9 at 26, 215–24 (AR 22, 211–20).  She alleged a disability onset date of September 1, 2014.  *Id.* at 26 (AR 22).  Plaintiff's application wound its way through preliminary proceedings and administrative denials, and then ended up before an ALJ for a hearing.  The ALJ conducted a telephonic hearing on June 9, 2020, where plaintiff participated by phone and testified.  *Id.* at 26 (AR 22); *see also id.* at 44–61 (AR 40–57).

On July 2, 2020, the ALJ issued a written decision.  It concluded that plaintiff was not disabled, as the Social Security Act defines that term, from September 1, 2014, to the decision's date.  *Id.* at 26–27 (AR 22–23).  Plaintiff then filed a request for review with the Appeals Council of the Social Security Administration.  *Id.* at 5–8 (AR 1–4).  The Appeals Council denied plaintiff's request for review on February 4, 2021.  *Id.*  Plaintiff thus has exhausted the proceedings before the Commissioner and now seeks judicial review and reversal of the final decision denying her Disability Insurance Benefits and Supplemental Security Income.

## II.     Legal Standard

### A.      Standard of Review

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions by the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's denial of benefits is limited to just two questions:  Whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct

legal standards. *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020); *see also Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); 42 U.S.C. § 405(g).

Federal courts evaluate an ALJ's factual findings under the substantial evidence standard. "On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The "threshold for such evidentiary sufficiency is not high." *Id.* at 1154. Substantial evidence is "more than a mere scintilla." *Id.* (quotation cleaned up). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation cleaned up). While the federal courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation cleaned up). But also, they do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012). When courts decide whether substantial evidence supports the Commissioner's decision, they "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision[.]" *Id.* "'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.'" *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)).

Failing "to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*,

311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)).  But such a failure justifies reversal only in "'appropriate circumstances'"—in other words, applying  an improper legal standard does not necessarily require reversal in all cases. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass*, 43 F.3d at 1395); *accord Lee v. Colvin*, No. 12-2259- SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing general rule set out in *Glass*).  Some errors qualify as harmless errors and thus require no remand or further consideration.  *See, e.g.*, *Mays*, 739 F.3d at 578–79; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

### B.     Disability Determination

Claimants seeking Disability Insurance Benefits and Supplemental Security Income bear the burden to show that they are disabled.  *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009). In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

The Commissioner applies "a five-step sequential evaluation process to determine disability."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and 20 C.F.R. § 416.920 (governing claims for Supplemental Security Income)).  As summarized by the Tenth Circuit, this familiar five-step process proceeds in this fashion:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity.  If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must

consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work.  Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).  The claimant must bear the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'"  *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  This analysis ends if the Commissioner determines at any point that the claimant is (or is not) disabled.  *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If it is determined that a claimant is or is not disabled at any point in the analysis, the review stops.").

## III.    Analysis

At step two of the disability determination process, the ALJ found that plaintiff has the following severe impairments:  obesity, degenerative joint disease of the knees, and coronary artery disease.  Doc. 9 at 29 (AR 25).  The ALJ also found that plaintiff has the following non-severe impairments:  sleep apnea, hyperlipidemia, hypertension, diabetes, asthma, and ankle pain.  *Id.* at 29–30 (AR 25–26).  Relevant to this appeal, the ALJ found—also at step two—that plaintiff has "medically determinable mental impairments of depression and anxiety[.]"  *Id.* at 30 (AR 26).  But, the ALJ found, these impairments "do not cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities and [are] therefore nonsevere."  *Id.* To make this finding, the ALJ considered the four "broad functional areas of mental functioning" that are "known as the 'paragraph B' criteria."  *Id.*  The ALJ found that plaintiff had no more

than a "mild limitation" in each of the four functional areas considered by this set of criteria.  *Id.*
at 30–31 (AR 26–27).

The ALJ then proceeded to step three, where the ALJ determined that plaintiff's
impairments, neither individually nor combined, equaled the severity of one of the impairments
listed in 20 C.F.R. pt. 404.  *Id.* at 31–32 (AR 27–28).  Instead, the ALJ determined that plaintiff
has the RFC "to perform sedentary work" with some exertional limitations.  *Id.* at 32 (AR 28).
The RFC didn't include any mental limitations.  *See id.*  Given this RFC finding, the ALJ
concluded plaintiff "is capable of performing past relevant work as a receptionist . . . and a
draftsman[.]"  *Id.* at 37 (AR 33).

Plaintiff asserts two challenges to the ALJ's RFC finding.  She first contends that the
ALJ, despite recognizing mild limitations for all four mental functioning areas at step two of the
analysis, didn't incorporate those findings into the RFC.  Plaintiff contends this omission ran
afoul of our Circuit's decision in *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013).  Plaintiff also
argues that the ALJ's RFC finding wasn't supported by substantial evidence.  Specifically, she
contends the ALJ substituted his own unexplained lay opinion when he rejected two medical
opinions concluding that plaintiff's physical impairments—specifically, pain and fatigue—would
impede her ability to work full time.  The court rejects plaintiff's first argument.  But it finds the
second one persuasive.  The court addresses both arguments, in turn, below.[2]

---

[2]       Plaintiff also raises a third challenge to the ALJ's decision.  She argues that the Commissioner's
decision denying her benefits was constitutionally defective because of a "for cause" removal restriction
on the SSA Commissioner at the time of her administrative hearing.  *See Seila L. LLC v. Consumer Fin.
Prot. Bureau*, 140 S. Ct. 2183, 2197 (2020) (holding that the Consumer Financial Protection Bureau's
"leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the
separation of powers").  While the parties devote a significant portion of their briefs to this issue, the
court doesn't address it.  As plaintiff herself acknowledges, the doctrine of constitutional avoidance
counsels the court to avoid constitutional issues unless it must confront them.  Doc. 20 at 5 (citing
*Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (establishing the rule that courts "will not
pass upon a constitutional question although properly presented by the record, if there is also present

A.      **Mental Impairments**

The ALJ found that plaintiff's depression and anxiety were medically determinable impairments.  But, the ALJ concluded these impairments weren't severe.  To reach this finding, the ALJ considered each of the four broad functional areas of mental functioning found in the disability regulations used to evaluate mental disorders.  *See* 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3).  These four areas are known commonly as the "paragraph B" criteria.  *See, e.g.*, *Stephanie G. v. Kijakazi*, No. 20-2623-EFM, 2022 WL 266801, at *4 (D. Kan. Jan. 28, 2022) (internal quotations omitted).  The "paragraph B" criteria evaluate plaintiff's ability to "[(1)] [u]nderstand, remember, or apply information; [(2)] interact with others; [(3)] concentrate, persist, or maintain pace; and [(4)] adapt or manage oneself."  20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3).  The applicable regulations direct ALJs to rate a plaintiff's degree of limitation in each of these four areas by using a "five-point scale:  [n]one, mild, moderate, marked, and extreme."  *Id.* §§ 404.1520a(c)(4); 416.920a(c)(4).  If the ALJ finds "none" or a "mild" limitation, the ALJ generally concludes that the impairment isn't severe.  *Id.* §§ 404.1520a(d)(1); 416.920a(d)(1).

The ALJ found that plaintiff here had "a mild limitation" in all four areas outlined by the "paragraph B" criteria.  Doc. 9 at 30–31 (AR 26–27).  Applying the regulations, the ALJ found plaintiff's mild mental impairments weren't severe.  *Id.*  Plaintiff doesn't challenge that finding. Instead, she argues that the ALJ should've applied these findings to the RFC.  As support, plaintiff relies on our Circuit's decision in *Wells v. Colvin*.  In that case, the Circuit held that an ALJ's finding that plaintiff's "mental impairments are non-severe at step two does not permit the

---

some other ground upon which the case may be disposed of")).  Because the court finds remand is required on a non-constitutional ground, the court needn't address the constitutional issue that plaintiff raises.

ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells*, 727 F.3d at 1068–69.[3]  Instead, the "ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.'" *Id.* at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).  And, our Circuit instructed, that discussion "must consider the combined effect of *all* medically determinable impairments, whether severe or not." *Id.* at 1069.  Plaintiff contends the ALJ failed to incorporate her non-severe mental impairments in the RFC discussion, as *Wells* requires.  The court is unpersuaded.

In *Wells*, the ALJ had found that the claimant's mental impairments weren't severe and then stated that "these findings do not result in further limitations in work-related functions in the RFC assessment below." *Id.* at 1069 (quotation cleaned up).  Our Circuit expressed concern that this language suggested "that the ALJ may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments[,]" which would amount to error "under the regulations and the Commissioner's procedures." *Id.*  The Circuit noted, however, that "to some degree[,]" the ALJ "separately discuss[ed] [the claimant's] mental impairments" when developing the RFC. *Id.*  But, ultimately, the ALJ's conclusions about the mental RFC assessment weren't supported by substantial evidence, for reasons that don't matter here. *Id.* at 1069–71.  So, the Circuit reversed the ALJ's decision and remanded for further proceedings. *Id.* at 1071.  In short, the problem in *Wells* was two-fold:  (1) it was questionable whether the ALJ improperly had "relied on his finding of non-severity as a substitute for [an]

---

[3]    As the relevant Social Security Ruling explains, the "paragraph B" criteria that an ALJ uses "to rate the severity of mental impairment(s)" at steps two and three of the disability determination "are not an RFC assessment[.]"  SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (internal quotations omitted).  Instead, the ALJ must develop—separate from severity findings—a "mental RFC assessment[,]" which "requires a more detailed assessment" of "various functions contained in the broad categories found in paragraph[ ] B . . . of the adult mental disorders listings[.]"  *Id.*

adequate RFC analysis[;]" and (2), in any event, the ALJ's RFC finding wasn't supported by substantial evidence.  *Id.*

In the current case, the ALJ, after finding that plaintiff's mental impairments weren't severe, stated that the "following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."  Doc. 9 at 31 (AR 27). This language comes close to the language that the ALJ used in *Wells*, which concerned the Circuit.  727 F.3d at 1069; *see also Stephanie G.*, 2022 WL 266801, at *6 (concluding that the exact same statement made by the ALJ here was "very similar to the one that *Wells* implied would be inadequate").  But, unlike *Wells*, the court concludes that the ALJ in this case adequately addressed plaintiff's mental limitations in his RFC discussion and explained why those limitations didn't affect the RFC.  And, while doing so, the ALJ described how the evidence supported his conclusion.

The RFC findings addressed plaintiff's mental impairments when discussing the May 2020 opinion from Licensed Specialist Clinical Social Worker (LSCSW) Lori Crane, an opinion that the ALJ found almost entirely persuasive.[4]  Doc. 9 at 35 (AR 31).  The ALJ described Ms. Crane's findings at length, *see id.*, and the court finds no reason to repeat those detailed findings here.  It suffices to say that Ms. Crane rated almost all of plaintiff's mental abilities and aptitudes needed for semiskilled and skilled work as "unlimited or very good" or "good" and the ALJ repeated those findings and found them persuasive.  *Id.* at 35, 652–56 (AR 31, 648–52). Importantly, Ms. Crane gave plaintiff's mental health a good prognosis.  *Id.* at 653 (AR 649). She specified that plaintiff was "making progress [with] coping and implementing skills[.]"  *Id.* The ALJ found this opinion was consistent with the medical evidence, which showed that

---

[4]      The ALJ rejected one aspect of Ms. Crane's opinion, which Part III.B discusses.

plaintiff's "persistent depressive disorder" was "mild and in partial remission." *Id.* at 35 (AR 31).

As support for that conclusion, the ALJ relied on the findings of state psychological consultants Steven Akeson, PsyD, and Vincent Marziano, PhD, which the ALJ found persuasive. *Id.* at 36 (AR 32). Both doctors found that plaintiff's mental impairment was non-severe and didn't affect her ability to work. *Id.* at 68, 83, 100–01, 115–16 (AR 64, 79, 96–97, 111–12). The ALJ concluded that those findings comported with the record evidence, which noted that plaintiff had depression but didn't mention significant issues or complaints and was doing well on Celexa, an anti-depressant. *Id.* at 523, 534, 538–39 (AR 519, 530, 534–35). Dr. Marziano acknowledged that plaintiff—given her loss of certain family members—had experienced fluctuating symptoms, grief, physical issues, and financial stressors. *Id.* at 116 (AR 112). But, Dr. Marziano noted, there was no formal psychiatric history. *Id.* The ALJ found these opinions consistent with the medical evidence documenting that plaintiff, while at times sad and anxious, also was alert, oriented, calm, euthymic, pleasant, cooperative, adequately groomed, with fair attention, clear speech, and an adequate fund of knowledge. *Id.* at 558, 571, 620, 626, 636 (AR 554, 567, 616, 622, 632). Given these findings, the ALJ agreed with Drs. Akeson and Marziano that plaintiff's physical impairments were the primary reasons impeding her employment. *Id.* at 36, 68, 83 (AR 32, 64, 79).

Plaintiff has cited no record evidence about her mental impairments that the ALJ overlooked. Instead, she focuses solely on the ALJ's failure to include in the RFC the mild mental limitations the ALJ found at step two. But ALJs aren't required to import their "paragraph B" criteria findings into their RFC determinations. *See Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014); *Stephanie G.*, 2022 WL 266801, at *5 (noting "that the inclusion of

some functional limitation in the RFC on the basis of a finding of mild paragraph B limitations is not mandated" (citing *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013))).  Instead, the ALJ must discuss the mental impairments in narrative detail alongside the evidence supporting the ultimate RFC finding.  The ALJ discharged this task here when he formulated plaintiff's RFC.  That the ALJ determined plaintiff's mental impairments didn't produce a work-related functional limitation to include in the RFC doesn't provide a reason to reverse the Commissioner's decision.  *Cf. Bales*, 576 F. App'x at 798 (concluding that "the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case").  The court thus rejects plaintiff's first argument for remand.

B.      **ALJ's Rejection of Certain Medical Opinions**

Plaintiff raises a second challenge to the ALJ's RFC finding.  It focuses on the ALJ's rejection of certain medical opinions about plaintiff's pain, fatigue, and predicted work absences. Plaintiff contends that the ALJ failed to explain the reasons for rejecting these opinions, and instead substituted his own lay opinions.  The court agrees with plaintiff.

*First*, the ALJ rejected—without any explanation—Ms. Crane's opinion that plaintiff likely would require two absences from work per month because of her impairments. Importantly, as discussed above, the ALJ found that the rest of Ms. Crane's opinion about plaintiff's mental impairments was persuasive.  Indeed, the ALJ specifically noted Ms. Crane's opinion that plaintiff had only a "fair" ability to perform "at a consistent pace without an unreasonable number and length of rest periods."  Doc. 9 at 35, 654 (AR 31, 650).[5]  Ms. Crane specified that she gave plaintiff this "fair" rating "due to pain[.]"  *Id.* at 654 (AR 650).  And,

---

[5]      A "fair" rating is below "good" and above "poor."  *See* Doc. 9 at 654 (AR 650).

because of plaintiff's impairments, Ms. Crane anticipated that plaintiff would miss work about twice a month. *Id.* at 655 (AR 651). Nevertheless, the ALJ rejected that part of Ms. Crane's opinion because he did "not agree with the opined absenteeism[.]" *Id.* at 35 (AR 31). But the ALJ never provided an explanation why he rejected that part of Ms. Crane's opinion while finding "the remainder of the opinion . . . persuasive." *Id.* In other words, the ALJ agreed with the lion's share of Ms. Crane's findings but rejected her conclusion about projected absences without explanation. Our Circuit has "repeatedly held" that an "'ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.'" *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (further citations omitted)). Because two absences per month could affect plaintiff's ability to perform her past relevant work, the court finds the ALJ must evaluate Ms. Crane's opinion about plaintiff's predicted absences properly. *See* SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

*Second*, and relatedly, the ALJ found that the opinion of medical examiner Sofia Khan, M.D. wasn't persuasive. In Dr. Khan's opinion, plaintiff's "significant fatigue" would interfere with her ability to work an eight-hour shift. Doc. 9 at 559 (AR 555). Indeed, Dr. Khan believed, plaintiff's fatigue would require her to take "long breaks" and "possibly one or two naps during the day." *Id.* Dr. Khan associated plaintiff's fatigue with her uncontrolled diabetes mellitus. *Id.* at 559 (AR 555) (noting "[u]ncontrolled [diabetes mellitus] with fatigue"). But the ALJ rejected Dr. Khan's opinion because, in his view, the opinion wasn't supported by "the internal evaluation of [plaintiff] and seems to be based on [plaintiff's] subjective complaints." *Id.* at 37

(AR 33).  The ALJ continued:  "The examination was normal, with regular heart rate and rhythm and no murmurs, gallops or rubs.  [Plaintiff's] extremities demonstrated no edema, cyanosis or clubbing.  Sensory examination was unremarkable in the extremities, and no motor or balance issues were noted."  *Id.*  The ALJ concluded that Dr. Khan's opinion wasn't consistent with the record evidence, which also showed plaintiff had a "regular heart rate, and rhythm with no murmurs, gallop or rubs[.]"  *Id.* (citations omitted).  The ALJ didn't discuss Dr. Khan's opinion that plaintiff's fatigue was associated with her uncontrolled diabetes mellitus.  And, plaintiff has highlighted record evidence from Charles Korte, M.D., a state agency physician, who similarly noted that plaintiff's fatigue may result from her uncontrolled diabetes mellitus.  *Id.* at 106 (AR 102).  The ALJ never addressed that evidence.

The court concludes that the ALJ's reasons for rejecting Dr. Khan's opinion, in effect, substituted the ALJ's medical opinion for Dr. Khan's.  The ALJ didn't discuss Dr. Khan's opinion that plaintiff's uncontrolled diabetes mellitus potentially caused significant fatigue, requiring several breaks and naps during the day.  Instead, the ALJ reasoned, if plaintiff hadn't demonstrated certain physical symptoms then plaintiff's fatigue couldn't interfere with her work ability.  In effect, the ALJ rejected Dr. Khan's opinion based on his own medical judgment about the possible cause of significant fatigue that might interfere with work ability.  The court agrees with plaintiff.  This was error.  *Cf. Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) ("[T]he ALJ erred in rejecting Dr. Spray's opinions without adequate justification and in substituting his own medical judgment for that of mental health professionals.  This, in turn, led the ALJ to make conclusions about the effects of plaintiff's mental impairments on his ability to work that did not fairly take into account all the evidence.").

In the end, plaintiff has adduced evidence that her physical pain and significant fatigue impede her ability to work full-time without interruption.  The ALJ erred by rejecting that evidence—either without explaining why, or by improperly substituting his own medical judgment.  Given that any inability to work an eight-hour day without significant breaks or daily naps certainly could affect plaintiff's RFC and her resulting ability to perform past relevant work, the ALJ's decision that plaintiff possesses the RFC to perform past relevant work isn't supported by substantial evidence.

## IV.    Conclusion

The court concludes that the ALJ properly considered plaintiff's mental limitations in developing plaintiff's RFC.  The court remands this case for the ALJ to evaluate properly the medical opinions about plaintiff's need for absences and long breaks from work, as discussed in more detail in this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income is reversed.  The court directs the Clerk to enter Judgment under the fourth sentence of 42 U.S.C. § 405(g) and remands the case for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

**Dated this 7th day of September, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

14